**Thomas DAVIS, Plaintiff,**

v.

**Donna SHALALA, Secretary of the Department of Health & Human Services, Defendant.**

**No. CV 93–3666.**

United States District Court, E.D. New York.

March 31, 1995.

Binder & Binder (Charles E. Binder, of counsel), Hauppauge, NY, for plaintiff.

Zachary W. Carter, U.S. Atty., E.D.N.Y. by Sarah J. Lum, Asst. U.S. Atty., Brooklyn, for defendant Secretary.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

The plaintiff, Thomas Davis ("plaintiff" or "Davis") appeals a decision by the Secretary of the Department of Health and Human Services ("Secretary") denying him Social Security disability benefits under section 223 of the Social Security Act, 42 U.S.C. § 423 (1988) ("Title II"). Davis moves pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a judgment on the pleadings in his favor. On behalf of the Secretary, the United States ("defendant" or "Government") moves for judgment on the pleadings in its favor.

## STATUTORY AND REGULATORY FRAMEWORK

Social Security disability benefits under Title II of the Social Security Act ("Act") are governed by the statutory provisions at 42 U.S.C. § 423. Supplemental Security Income ("SSI") disability benefits are governed by section 1611 of the Act, 42 U.S.C.A. § 1382 (West Supp.1994) ("Title XVI"). *See Chester v. Heckler,* 610 F.Supp. 533, 534 (S.D.Fla.1985) (explaining the difference between the two disability provisions).

In the present case Davis applied for both Title II and Title XVI disability benefits. The Secretary approved Davis' application for SSI disability benefits, but denied the application for Social Security benefits under Title II. The Secretary's approval of SSI disability benefits is not being appealed, and the Court will only deal in this decision with

the Secretary's denial of disability benefits under Title II.

Entitlement for disability benefits under Title II requires that the individual must (1) be insured for disability insurance benefits by having accumulated a requisite amount of coverage—measured in quarters of years—for years worked after 1950 or age twenty-one, (2) not have attained retirement age, (3) have filed an application for disability benefits, and (4) be under a "disability." 42 U.S.C. § 423(a)(1).

The statute defines "disability" in relevant part to mean:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;
>
> . . . .
>
> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A).

The regulations promulgated by the Social Security Administration ("SSA") to implement the statutory provisions governing eligibility for disability benefits under Title II establish a five-step evaluation process for determining disability benefits. *See* 20 C.F.R. § 404.1520–1575. *According to* 20 C.F.R. § 404.1520, the five-step evaluation process entails consideration in serial fashion of the applicant's current work activity, the severity of his or her physical and/or mental impairments, the applicant's physical and mental limitations, whether the applicant can perform any other kind of work in light of his or her limitations, and his or her age, education and past work experience.

In the first step, a determination must be made that the applicant is not working and doing "substantial gainful activity." If the applicant is involved in such activities, then he or she is not disabled. 20 C.F.R. § 404.1520(b). If the applicant is not working and doing "substantial gainful activity," then the Secretary must conduct the second step and determine whether the applicant has a "severe impairment." If it is determined that the applicant's impairment or combination of impairments does not significantly limit his or her physical or mental ability to do basic work activities, then the applicant does not have a "severe impairment" and cannot be disabled. 20 C.F.R. § 404.1520(c). Third, if the applicant has a severe impairment which meets the twelve month duration requirement specified in the statute, and is (i) listed among the impairments in Appendix 1 to 20 C.F.R. Part 404 subpart P ("Appendix 1"), or (ii) is considered as "equal" to the listed impairments in Appendix 1 as determined by 20 C.F.R. § 404.1526, then the Secretary must deem the applicant disabled. 20 C.F.R. § 404.1520(d).

If the Secretary cannot make a disability decision on the basis of the first three steps and the applicant has a severe impairment, then under the fourth step the SSA reviews the applicant's "residual functional capacity" and the physical and mental demands of the work the applicant has done in the past. Residual functional capacity is the applicant's physical and mental strength capability to perform work despite the limitations resulting from his or her impairment. *See* 20 C.F.R. § 404.1545(a); Appendix 2, 20 C.F.R. Part 404 subpart P sec. 200.00(c). If the applicant can still perform the kind of work he or she performed in the past, they are deemed not to be disabled. 20 C.F.R. § 404.1520(e).

If after conducting the evaluation in step four it is determined that the applicant cannot perform his or her past work, then in the fifth step the Secretary must consider the applicant's age, education and vocational skills as well as his or her residual functional capacity, to determine if the applicant can do any other work. If after considering all of these factors the Secretary determines that the applicant still cannot do other work, then he or she is considered disabled. 20 C.F.R. § 404.1520(f).

With regard to the fifth step, the factors to consider when reviewing the applicant's vocational skills, education and age are set forth in 20 C.F.R. §§ 404.1560–1569a. In order to simplify and expedite the determination of disability under step five, Appendix 2 to 20 C.F.R. Part 404 subpart P ("Appendix 2") contains several tables, called GRIDs, which provide predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill. *See* 20 C.F.R. § 404.1569. The GRIDS are categorized according to whether the individual's residual functional capacities can sustain sedentary work, light work and medium work. *See* Appendix 2, Tables 1–3. The predeterminations of disability and non-disability contained in the GRIDs are delineated by rules reflecting different criteria encompassing the applicant's age, educational level and vocational skills, measured against the applicant's residual functional capacity.

### BACKGROUND

1. *Davis' Relevant Medical History.*

The plaintiff is presently fifty four years old. He has a tenth grade education. Prior to the onset of his disability, which he alleges began on July 1, 1989, Davis primarily worked as a heavy construction worker and steeple jack. His duties entailed, among other things, digging foundations, lifting and carrying bricks, cinderblocks and bags of cement, pushing wheelbarrows and climbing scaffolds.

Davis was hospitalized at Huntington Hospital on June 28, 1986 as the result of sustaining injuries to his right foot and calf after being hit by a car and dragged for approximately 120 feet. An open reduction and fixation of the right ankle was performed on June 29, 1986 by Dr. J. Ellstein. The prognosis by Dr. Ellstein in Davis' discharge summary, dated July 11, 1986, states that Davis may develop post-traumatic arthritis of the right ankle. A metallic rod transfixing the distal fibula remains in Davis' right ankle.

During the time he was hospitalized, Davis was also examined by several other doctors. After the operation, Davis was diagnosed with borderline labile blood pressure by Dr. Robert Ringler. In the summary of his examination, Dr. Ringler noted that Davis smoked and drank about one-half pint of whisky per day, but did not suffer from alcohol withdrawal symptoms when denied the whisky. Dr. Ringler also stated that he thought that some day Davis would end up being treated for hypertension. Dr. Robert Goodman reviewed X-rays of Davis' skeleton. He noted degenerative changes of the C5–6 and C6–7 discs, and a deformity in the right clavicle due to either a previous trauma or a large osteochondroma. The remaining skeletal parts seemed to be normal and intact.

More than four years after his accident, on November 2, 1990, Davis went to the emergency room at Huntington Hospital complaining of pain in his right side. According to the emergency room notes, Davis stated the pain appeared the previous day when he attempted to lift a bag of cement. An emergency room nurse prescribed moist heat, naprosyn and tylenol. The diagnosis on discharge was right lumbar sprain.

On October 31, 1991 Davis protectively applied for disability benefits. He then went to see Dr. Ringler for an examination in conjunction with his disability application. Dr. Ringler completed a musculoskeletal medical examination of Davis on November 13, 1991. As part of his examination, Dr. Ringler performed a residual functional capacity exam on Davis, consisting of evaluating the amount of physical exertion Davis could perform. The test results showed that Davis' range of physical exertion was "less than sedentary." According to Dr. Ringler, Davis could only lift less than 10 pounds, stand or walk for less than two hours a day

and sit for less than six hours a day. Dr. Ringler also concluded that, because of the back pain, Davis could not stoop or bend for long periods, remain seated for long periods, crouch, squat or climb.

Dr. Ringler diagnosed the plaintiff as suffering from ankle dislocation, lumbar back pain and hypertension. He also found that Davis had both a limited range of motion in the lower back, as well as a shortened and painful right leg. In describing Davis' history, Dr. Ringler wrote that Davis sustained a leg/ankle injury from a motor vehicle accident in 1986, which "more recently" has led to the back pain.

On February 14, 1992 the Social Security Administration ("SSA") scheduled an examination of Davis by Dr. Myles Schneider, a neurologist and psychiatrist. According to Dr. Schneider, Davis told him that he used to drink Vodka every day, but that he stopped drinking in 1988 after enrolling in an outpatient clinic. Dr. Schneider noted that Davis' behavior appeared consistent with "a moderate-to-substantial degree of limitation in personal, social and occupational adjustment." The diagnostic impression of Davis by Dr. Schneider was (i) alcohol abuse assertedly in remission, (ii) no mental disorder, and (iii) back problems, high blood pressure, status post accident. Dr. Schneider concluded that Davis might benefit from continued alcohol counseling and vocational rehabilitation, and that Davis "is capable of responding appropriately to supervision, co-workers and work pressures in a work setting."

The SSA also scheduled an examination of Davis by Dr. A. Raciti on March 23, 1992. In his history, Dr. Raciti noted that since the time of the accident in 1986, Davis has complained of constant pain in the right ankle, resulting in difficulty in walking, and chronic lower back pain that is exacerbated with prolonged lifting or walking. In addition, Dr. Raciti noted that because of the leg and back pain, Davis has been unable to perform the tasks required by his occupation as a heavy construction worker, and has not worked for two years.

Dr. Raciti's impression of Davis's symptoms were (i) chronic right ankle and lower back pain secondary to a motor vehicle accident, (ii) status post open reduction fracture right ankle, and (iii) hypertension. X-rays taken that same day revealed a disc space narrowing at L5–S1.

Finally, on May 7, 1992 Mr. Davis commenced treatment by Dr. Allen Josephs. In a letter to Davis' attorneys dated October 20, 1992, Dr. Josephs stated that "Davis has been under my treatment for injuries sustained in a motor vehicle accident in which he was hit by a car in the year 1988 [sic]." Moreover, upon conducting an examination of Davis, Dr. Josephs concluded that Davis was permanently disabled:

> Physical examination revealed marked palpable muscle spasm and rigidity of the lumbar spine and radiculopathy of the right and left hip and leg. Straight leg raising test is positive at around 20–30 degrees over the right lumbro-sacral area and 40–50 and left lumbro-sacral area. He is unable to walk any distance without pain in the low back and right leg. . . . It is my professional opinion that Mr. Davis is totally and permanently disabled.

In what is described by the plaintiff as an addendum to his letter, Dr. Josephs stated on March 8, 1993 that "in my best medical opinion, I hereby state that [Davis] was disabled prior to June 30, 1991."

2. *Administrative Proceedings.*

On October 31, 1991 Davis protectively filed an application for Social Security disability benefits under Title II, and for SSI disability benefits under Title XVI. The reasons Davis stated for his disability were chronic back and leg pain, and alcohol abuse. In his application, Davis stated that the onset date of his disability was August 16, 1990.

SSA formally notified Davis on May 5, 1992 that his application for disability benefits was denied. On June 26, 1992, SSA also denied Davis' request for reconsideration. Davis then timely filed a request for an administrative hearing. A *de novo* hearing was held before Administrative Law Judge ("ALJ") Murray Sklaroff on November 2, 1992. Davis testified about his medical condition during the hearing, and also amended

the alleged onset date of his disability to July 1, 1989.

Judge Sklaroff first determined that Davis was last insured for Title II disability purposes as of June 30, 1991, and was therefore required to establish that his disability commenced on or prior to that date in order to qualify for Title II disability benefits. Judge Sklaroff also found that prior to June 30, 1991, Davis was forty-nine years old. After reviewing Davis' medical history, Judge Sklaroff performed the five-step disability evaluation set forth in the regulations. He found that Davis was severely impaired by a lumbar back pain syndrome and the residuals of fractures to his right leg and ankle. He also determined that Davis' severe impairment was not among the listed impairments in Appendix 1, nor considered an equal impairment to the listed impairments in the regulations. Judge Sklaroff then found that Davis' impairment prevented him from working in his past employment as a heavy construction worker from at the earliest, January 1, 1990.

Judge Sklaroff then conducted the fifth step of the evaluation. Judge Sklaroff concluded that although severely impaired, Davis residual functional capacity still allowed him to be capable of performing sedentary work prior to June 30, 1991. Then, using the GRID at Table 1 of Appendix 2 (hereinafter the "GRID"), which applies to individuals whose residual functional capacity is limited to sedentary work, Judge Sklaroff determined that Davis' age at the time he was last insured, education and vocational skills designated him as not being disabled under Rule 201.18. Rule 201.18 predetermines that an individual is not disabled if (i) they are between the ages of 45–49, (ii) they are literate and able to communicate in English, and (iii) they are unskilled. Accordingly, Judge Sklaroff ruled that on or prior to June 30, 1991, the date Davis was last insured for Title II disability benefits, Davis was not disabled and therefore was not entitled to disability benefits.

Judge Sklaroff also determined, however, that Davis was eligible for SSI disability benefits and granted the application with respect to these benefits. As mentioned previously, the parties do not appeal this portion of the ALJ's ruling, and the Court need not consider it.

Davis requested review of the ALJ's ruling by the Appeals Council. On June 16, 1992 the Appeals Council denied Davis' request for review, stating that none of bases for reviewing the ALJ's ruling existed. Specifically, the Appeals Council concluded that the weight of the medical evidence supported the ALJ's ruling that Davis could perform sedentary work and that he was not disabled on or prior to June 30, 1991. The Appeals Council also rejected Davis' contention that the ALJ "mechanically" applied Davis' age to the GRID, by placing Davis in the forty-nine years of age category for the purposes of determining his disability status pursuant to Rule 201.18. Davis contended that on June 30, 1991 he was three months shy from his fiftieth birthday, and that under the circumstances of his case the ALJ should have placed him in the over fifty-years of age category. By being placed in that age category, the GRID predetermination would have found Davis disabled pursuant to Rule 201.09.

Davis timely commenced the present action seeking review of the Secretary's decision denying him the Title II disability benefits, pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g). The complaint alleges that the ALJ's ruling is erroneous and unfounded, because it is not supported by substantial evidence but, rather, is against the weight of the medical evidence. The complaint also alleges that the ALJ's ruling is erroneous as a matter of law, and is arbitrary and capricious.

**PRESENT MOTIONS BEFORE THE COURT**

The plaintiff moves pursuant to Rule 12(c) for a judgment on the pleadings in his favor. Davis essentially makes two contentions. His first contention is that the ALJ failed to properly evaluate the medical evidence, which, according to the plaintiff, clearly reveals that Davis was not able to perform any type of work at all prior to June 30, 1991. In support of this contention, the plaintiff relies upon the October 20, 1992 report and March 8, 1993 addendum of Dr. Josephs, which, respectively, state that Davis was perma-

nently disabled and the onset of his disability occurred prior to June 30, 1991. The plaintiff also points to (1) the November, 1991 residual functional capacity evaluation performed by Dr. Ringler, which allegedly indicates that Davis' range of physical exertion was less than sedentary, and (2) the November, 1990 emergency room diagnosis of a lumbar sprain.

The plaintiff also contends that the ALJ "mechanically" applied the GRID to determine Davis' non-disability. According to the plaintiff, Davis' age of forty nine years and nine months placed him in a borderline situation with respect to the GRIDs category for age. Davis argues that this borderline situation should have been considered by the ALJ in determining Davis' entitlement for disability, and that the mechanical application of the GRID with regard to Davis' age was erroneous.

On the other hand, the United States contends that the ALJ properly determined that Davis was not disabled prior to June 30, 1991, and that there was substantial evidence in the record to support this determination. Moreover, the United States contends that the ALJ's determination of non-disability based on the GRID was in every way proper. Accordingly, the United States moves pursuant to Rule 12(c) for a judgment on the pleadings in its favor.

## STANDARDS OF REVIEW

### Judgment on the Pleadings.

■ Judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). In considering a motion for judgment on the pleadings, the court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences therefrom in favor of the non-movant. *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *DeSantis v. United States*, 783 F.Supp. 165, 168 (S.D.N.Y.1992). Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief, the court can not grant a defendant's motion for judgment on the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.) (when deciding a Rule 12(c) motion, the court applies the same standard as that applicable to a 12(b)(6) motion), *cert. denied*, —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

### Review of the Secretary's Decision.

■ The Court may set aside the Secretary's determination only if it is based upon legal error, or is not supported by substantial evidence in the record as a whole. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). Substantial evidence is defined as what a reasonable mind might accept as adequate to support a conclusion. Such evidence is more than a scintilla, but less than a preponderance of the evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Moreover, as long as the Secretary's view is supported by substantial evidence, this Court cannot substitute its judgment for that of the Secretary's. *Parker v. Harris*, 626 F.2d 225, 232 (2d Cir.1980).

■ When reviewing claims for disability, the weight assigned to various medical evidence by the Secretary is governed by the "treating source" rule, also known as the "treating physician" rule. As specified in 20 C.F.R. §§ 404.1527(d) and (d)(2), the rule provides that the treating physician's opinion as to the claimant's disability is controlling if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record.

If the treating physician's opinion is not supported by medically acceptable techniques or is inconsistent with the substantial evidence, then the weight to be given to the opinion is determined by considering the following factors: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the relevant evidence supporting the opinion; (iv) the consistency of the opinion with the record; (v)

whether the opinion is from a specialist; and (vi) other relevant information provided by the claimant to support the opinion. *See* 20 C.F.R. § 404.1527(d); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir.1993).

■ At the time of the ALJ's decision in this case the SSA had not promulgated the treating source rule. The ALJ had, instead, followed a more expansive version of the treating source rule formulated by the Second Circuit in *Schisler v. Bowen*, 851 F.2d 43, 46–47 (2d Cir.1988). A comparison of the court's rule with agency's final rule is set forth in *Schisler v. Sullivan*, 3 F.3d at 567–68 (approving the agency rule and directing that it be followed by courts in this Circuit). Under the rule of *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801), this Court is bound to follow the later agency rule in reviewing the ALJ's decision on appeal. *See id.* 5 U.S. at 110 ("[I]f ... before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed."); *Axel Johnson Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 84 (2d Cir.1993).

### DISCUSSION

■ Preliminarily, the Court notes that the plaintiff must be insured for disability in order to qualify for disability benefits. *See* 42 U.S.C. §§ 423(a) and 423(c) (setting forth definition of insured status). If a claimant becomes disabled after their insured status has lapsed, they are not entitled to disability benefits. *See Jones v. Sullivan*, 949 F.2d 57, 58 (2d Cir.1991); *Arnone v. Bowen*, 882 F.2d 34, 37–38 (2d Cir.1989).

In this case, the parties agree that Davis' insured status lapsed as of June 30, 1991. As a result, Davis must prove that the onset of his disability occurred on or prior to that date in order to be entitled to disability benefits under Title II.

1. **The Secretary's Decision That Davis Could Perform Sedentary Work is Not Supported by Substantial Evidence in the Record.**

After reviewing all of the evidence in the record, Judge Sklaroff determined that he saw "nothing which militates against the conclusion that Mr. Davis [was] capable of performing sedentary work" prior to June 30, 1991, even though Davis could not perform his prior relevant work as a heavy construction worker after January 1, 1990. *See* Transcript ("Tr.") at 17. In the Court's view, this conclusion is unsupported by substantial evidence, and inconsistent with the other medical evidence in the record.

■ In performing the fifth step of the five-step disability evaluation set forth in 20 C.F.R. § 404.1520, the Secretary must consider the claimant's residual functional capacity, among other things, to determine if the claimant can do any other work in the national economy. 20 C.F.R. § 404.1520(f). It is the Secretary's burden of proof in the fifth step to show that the claimant can do other work. *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). *See also* Tr. at 16 ("[T]he burden of going forward with the evidence then shifts to the Secretary at the fifth step to establish what alternative substantial gainful activity ... [the] claimant can perform.").

■ As explained earlier, residual functional capacity is defined in the regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." *See* Appendix 2, 20 C.F.R. Part 404 subpart P sec. 200.00(c); *see also* 20 C.F.R. § 404.1545(a). Therefore, in order to evaluate whether a claimant has the capacity to do any other work in the national economy, the claimant's residual functional capacity or sustained work capability must be assessed in light of the alternative jobs' physical and mental demands. 20 C.F.R. § 404.1545(b).

■ The physical demands of a job are, in turn, measured in terms of the strength required to meet the sitting, standing, walking, lifting and other physical demands of the job. *Id.* Limitations that affect a claimant's ability to meet these strength demands are classified as exertional limitations, *see* 20 C.F.R. § 404.1569a(a), and are categorized according to sedentary, light, medium, heavy and very heavy levels of sustained work capability. These are the categories of work

capability used by the Department of Labor publication *Dictionary of Occupational Titles.*

■ Thus, before even considering whether a claimant's age, education and vocational skills may qualify him for performing another job, and hence being predetermined as disabled or not disabled under the GRID, the Secretary must first determine what the applicant's exertional limitations are in order to place the applicant in the proper category of residual functional capacity or sustained physical work capability. *See* 20 C.F.R. §§ 404.1569a(b) and Appendix 2, 20 C.F.R. Part 404 subpart P sec. 200.00(c).

■ The error in this case, in the Court's view, is that Davis was placed in the sedentary category of work capability without any substantial evidence to support his capability to work at this level of physical work demand. Indeed, the ALJ's conclusion was not based on a positive finding that Davis could perform sedentary work. Rather, it was based on a negative finding that nothing in the record militated against the conclusion that Davis could perform such work. This Court disagrees with that conclusion.

Sedentary work is defined in the *Dictionary of Occupational Titles* as follows:

> Exerting up to 10 pounds of force occasionally.... Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Dept. of Labor, *Dictionary of Occupational Titles,* at 101 (4th Ed.Supp.1986). *See also* 20 C.F.R. § 404.1567(a) (defining sedentary work as involving "lifting no more than 10 pounds at a time" and requiring walking and standing occasionally). Occasionally is further defined in a footnote as "activity or condition exists up to ⅓ of the time." *Dictionary of Occupational Titles, supra,* at 101. Nothing in the record indicates that prior to June 30, 1991 Davis could meet these kinds of physical job demands. If anything, there is evidence indicating he could not.

After conducting an examination of, among other things, Davis' exertional functions on November 13, 1991 in conjunction with his application for disability, Dr. Ringler found that Davis' range of physical exertion was "less than sedentary." Specifically, Dr. Ringler's evaluation indicated that Davis could lift less than 10 pounds occasionally, he could stand or walk for less than 2 hours and could sit for less than 6 hours. This evaluation of Davis' exertional limitations contradicts the ALJ's conclusion that Davis could perform sedentary work. Davis could not lift up to 10 pounds occasionally as required by the regulations, but only less than ten pounds occasionally. Nor could he in an eight hour work day stand or walk for up to one third of the time. He could only do so for less than one fourth of the time (2 hours).

The Government contends that Dr. Ringler's evaluation does not establish that Davis was disabled prior to June 30, 1991. This contention misses the point, however. Davis' disability was determined by applying his residual functional capacity to his age, education and vocational skills, and arriving at the predetermination specified in the GRIDs. Had he been born three months earlier, that is, had he been fifty years old on June 30, 1991 rather than forty-nine and nine months, he would have been deemed disabled notwithstanding Dr. Ringler's evaluation. The medical evaluations were, thus, not conclusive of disability. Rather, they were only used by the Secretary to conduct the five-step evaluation set forth in 20 C.F.R. § 404.1520, namely to determine (i) that Davis did not have any of the listed impairments in Appendix 1, or an equal impairment, (ii) that Davis did have a severe impairment which precluded him from working in his usual job as a heavy construction laborer, and (iii) that his residual functional capacity still allowed him to do sedentary work. None of the medical evidence supports this last determination, except for Dr. Schneider's mental examination of Davis in February, 1992, which is insufficient by itself to warrant the determination that Davis could perform the physical demands of sedentary work.

Moreover, the fact that Dr. Ringler's examination was conducted in November, 1991 does not, in the Court's view, preclude a determination that the onset of Davis' back condition and physical limitations occurred more than four months earlier, namely, before June 30, 1991. Dr. Ringler noted that Davis' right leg was shortened. He also concluded that Davis' condition was the result of the ankle injury Davis sustained in 1986.

The other medical evidence also supports, and is not inconsistent with, a conclusion that the onset of Davis' physical limitations diagnosed by Dr. Ringler occurred before June 30, 1991. In November 1990, Davis was diagnosed with a right lumbar sprain after lifting a bag of cement. In March, 1992 Dr. Raciti, the SSA consulting physician, noted that Davis complained of chronic lower back pain that is exacerbated with prolonged lifting or walking. His impression of the symptoms was that the chronic lower back and right ankle pain was secondary to the motor vehicle accident. And finally, Dr. Josephs concluded in October 1992 that Davis could not raise his right leg more than 20–30 degrees, and that he was unable to walk any distance without pain in the lower back and right leg.

Finally, the Court need not decide which of these doctors, if any, is a "treating source." Evaluating all of the medical evidence under the factors enumerated in 20 C.F.R. § 404.1527(d) would result in giving more weight to Dr. Ringler's evaluations, because (1) he examined Davis, (2) he treated Davis on more than one occasion and, therefore, was in a better position than the other doctors to develop a longitudinal picture of Davis' condition, and (3) his evaluation is supported by a medical evaluation of Davis' exertion capabilities.

Accordingly, the Court finds that the Secretary's determination that Davis could perform sedentary work prior to June 30, 1991, is not supported by substantial evidence. A reasonable mind would not, in the Court's view, accept as adequate the evidence in the record to support the Secretary's conclusion.

### 2. Application of the GRID.

As a result of Davis' inability to perform sedentary work, the Court believes that the Secretary erroneously applied the rules set forth in Table 1 of Appendix 2. The regulations provide that in the situation where the facts do not coincide with the corresponding criteria of a rule in the GRID, such as when the person's residual functional capacity falls between the ranges of work capability indicated in the GRIDs, a conclusion of disabled or not disabled is not directed. *See* Appendix 2, 20 C.F.R. Part 404 subpart P sec. 200.00(a) and (d). In such a situation an individual's ability to perform another job "is decided on the basis of the principles and definitions in the regulations, giving consideration to the rules" in the GRID. *Id.*

Further, the regulations provide that the age categories will not be mechanically applied in a borderline situation. 20 C.F.R. § 404.1563(a). A borderline situation exists "where there would be a shift in results under the Grid caused by the passage of a few days or months." *Chester*, 610 F.Supp. at 534 (internal quotations and citations omitted).

In this case, Davis' situation was borderline. He was three months shy from his fiftieth birthday on the date he was last insured. Had he been fifty years of age on June 30, 1991, he would have been found disabled according to Rule 201.09 of the GRID. Rather than mechanically applying the age category to the GRID to determine Davis' entitlement to benefits, and especially in light of Davis' inability to perform sedentary work, the Court believes the Secretary was obligated to consider all of the facts of the case in light of the "principles and definitions in the regulations."

The principle underlying the regulations classifying persons under age 50 as "younger persons," indicates that the SSA "generally do[es] not consider that [their] age will seriously affect [their] ability to adopt to a new work situation." 20 C.F.R. § 404.1563(b). However, the principle changes with persons between the ages of 50 and 55, who are classified as "persons approaching advanced age." With respect to this age category, the

SSA considers that the person's age, "together with a severe impairment and limited work experience, may seriously affect [their] ability to adjust to a significant number of jobs in the national economy." 20 C.F.R. § 404.1563(c).

In the Court's view, Davis' inability to perform sedentary work at the age of 49 years and 9 months makes him more like someone in the category of approaching advanced age, whose age "may seriously affect [his] ability to adjust to a significant number of jobs in the national economy," than someone in the younger person category, whose age "will [not] seriously affect [their] ability to adopt to a new work situation." Indeed, this assessment is directly supported by the SSA's own psychiatrist, Dr. Schneider, who diagnosed Davis' behavior as appearing consistent with "a moderate-to-substantial degree of limitation in personal, social and occupational adjustment."

The facts of this case reveal a plaintiff with a metallic rod in his ankle, who has been diagnosed by his treating physician as "totally and permanently" disabled. The SSA's doctors' evaluations support the treating physician's diagnosis, including the SSA's psychiatrist who diagnosed that Davis would have difficulty in adjusting to another job. Under the principles of her the regulations, the Secretary should have considered all of the facts in this case and classified Davis as approaching advanced age, thereby determining that he was disabled prior to June 30, 1991 under Rule 201.09 of the GRID. *See e.g., Thompson v. Sullivan,* No. 92–C–1577, slip. op. at 5 (N.D.Ala.1993) (49½ year old women who could not perform sedentary work is more properly considered a person approaching advanced age and a determination of disabled is compelled; reversing Secretary's determination of no disability); *Chester,* 610 F.Supp. at 534 (remanding to Secretary for consideration of the borderline situation of a person who is 49 years and 11 months).

Accordingly, the plaintiff's motion for a judgment on the pleadings is granted, and the United States motion for a judgment on the pleadings is denied. The Secretary's decision is reversed, and the Secretary is directed to provide Social Security disability benefits to the plaintiff pursuant to 42 U.S.C. § 423. The matter is remanded to the Secretary for a determination of the amount of disability benefits due to the plaintiff.

The Clerk of the Court is advised that this action closes the case.

**SO ORDERED.**