**Douglas A. RUSSELL, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 1:96 CV 799.**

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 28, 1998.

Kenneth Frank Laritz, Kenneth F. Laritz Law Offices, Clinton Township, MI, for Douglas A. Russell.

Michael L. Schipper, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, for Commissioner of Social Security.

*OPINION*

ENSLEN, Chief Judge.

This matter is before the Court on Douglas Russell's Objections to Magistrate Judge Hugh W. Brenneman's Report and Recommendation (R & R) filed June 15,

1998, recommending affirmance of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Upon receipt of Plaintiff's objections, the Court conducted a *de novo* review of those portions of the R & R. to which Plaintiff objects pursuant to 28 U.S.C. § 636(b)(1)(C). The jurisdiction of this court is confined to a limited review of the Commissioner's decision and of the record made in the administrative hearing process. *Willbanks v. Secretary of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988). The proper scope of judicial review in a social security case is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision, and whether the Commissioner used the proper legal standards in making his decision. *Brainard v. Secretary of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

### Background

Plaintiff was born on July 19, 1945, and has a third grade education, supplemented by an eighth-grade equivalency certificate. He has also had vocational training in culinary arts. Plaintiff's work history includes such occupations as heavy equipment operator, janitor, small engine and lawnmower repair, amusement park worker, and cook. In his application for benefits, Plaintiff has alleged that a variety of impairments have combined to render him disabled within the meaning of the Social Security Act. These include degenerative arthritis which has required eight surgeries, a history of serious heart problems, a lung impairment, diabetes, and pain.

Plaintiff's case was heard by a Social Security Administration ("SSA") Administrative Law Judge ("ALJ"), who denied benefits on April 18, 1995. The Appeals Council denied Plaintiff's request for review on August 12, 1996.

Plaintiff raises one objection to the R & R. He contends that in considering his claim under the Medical–Vocational Guidelines, the ALJ erred by assessing his age category as that of "younger individual," rather than "closely approaching advanced age." Were Plaintiff's claim considered under the second category, he would qualify for receipt of benefits.

### Analysis

Social Security regulations provide that a claimant may be awarded benefits if, *inter alia*, he or she satisfies the Medical–Vocational Guidelines ("grids") contained at 20 C.F.R. Part 404, subpt. P, App. 2. The grids consider four factors relevant to a claimant's employability in the national economy: residual functional capacity, age, education, and previous work experience. In this case, the ALJ evaluated the Plaintiff under Table No. 1 of the grids. This table is used to evaluate claimants with a maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairments. In assessing the plaintiff, the ALJ found that the plaintiff had a limited education and that any skills he might have were not transferable. With these factors established, the finding of disability turned on the age category into which the plaintiff was placed. The ALJ found that the plaintiff was 49 years old, and therefore placed him in the category of "younger individual age 40–49."

█ For purposes of determining age under the grids, "the claimant's age as of the time of the decision governs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir.1987). On the date of the ALJ's decision, Plaintiff was 92 days short of his 50th birthday.

█ The regulations provide that in evaluating disability under the grids, the SSA "will not apply [the] age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). The regulations do not define the phrase "borderline situation," however. In an attempt to provide some definition, the SSA Hearings, Appeals and Litigation Law Manual ("HALLEX") includes two Appeals Council Interpretations on "borderline" age categories and the grids. The courts of appeals have given effect to the guidelines contained in HALLEX. *See Kirves v. Callahan*, 113 F.3d 1235, 1997 WL 210813 (6th Cir. April 25, 1997) (unpublished); *DeChirico v. Callahan*, 134 F.3d 1177 (2nd Cir.1998); *Perkins v. Chater*, 107 F.3d 1290 (7th Cir.1997).

First, in Appeals Council Interpretation II–5–302 (effective Mar. 16, 1979), the issue presented is "[h]ow far in advance of attainment of a specific age category ... may [the grids] pertinent to that category be applied?" In its interpretation, the Appeals Council states that "[g]enerally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable." While this response is not a model of clarity, it appears to establish that the Appeals Council believes there is a six month window in which a claimant's situation is "borderline."

A second Interpretation, II–5–302(A)(effective Nov. 2, 1993), answers the question "[w]hat is a borderline age situation and what factors should be considered when determining whether to use a higher age than a claimant's chronological age when applying [the Grids]?" The Interpretation states that:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
>
> (1) Determine whether the claimant's age is within a few days or a few months of a higher age category.
>
> (2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
>
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
>
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.)

This Interpretation is less specific than the first about the appropriate time frame, referring to "a few days or a few months," rather than "six months." Considering these two interpretations, as well as the conclusions of other courts addressing whether a "borderline situation" is presented on similar facts,

the Court concludes that Plaintiff presents just such a situation. *See Leyba v. Chater,* 983 F.Supp. 1048 (D.N.M.1996)(three and a half months borderline); *Davis v. Shalala,* 883 F.Supp. 828 (E.D.N.Y.1995) (three months borderline); *Hill v. Sullivan,* 769 F.Supp. 467 (W.D.N.Y.1991) (three months and two days borderline). *See also Daniels v. Apfel,* 154 F.3d 1129, 1998 WL 515160 (10th Cir. Aug.18, 1998) (65 days borderline).

Once a determination has been made that the claimant's age presents a borderline situation, it must then be determined which age category to use. According to Interpretation II–5–302(A):

> To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age— as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.
>
> One finds additional vocational adversity(ies) if some adjudicative factor(s) is relatively more adverse when considered in terms of that factor's stated criteria, or when there is an additional element(s) which has adverse vocational implications. Examples of these additional vocational adversities are the presence of an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining occupational base ...

The Tenth Circuit has provided a less specific test, holding that: "[t]he Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids." *Daniels,* 154 F.3d at 1136, 1998 WL 515160 at *6. In any event, when a borderline situation is presented, a factual determination must be made as to the appropriate age category. To do otherwise is to mechanically apply the age categories, an action prohibited by 20 C.F.R. § 404.1563(a).[1]

---

1. *Crady v. Sec'y of Health and Human Servs.,* 835 F.2d 617 (6th Cir.1987), is not to the contrary. In *Crady,* the Sixth Circuit held simply that borderline cases need not be automatically advanced

to a higher age category. It did not abrogate the ALJ's duty to find facts on the issue. Moreover, even if *Crady* could be interpreted to permit the determination to be purely discretionary, Appeals

■ In this case, the age categories were mechanically applied. In the ALJ's decision, he wrote:

> The claimant was born on July 19, 1945, and is currently 49 years old. Although sections 404.1563 and 416.963 of the Regulations provide that the age categories are not be [sic] applied mechanically, the fact remains that the claimant is not yet 50 years old. He is therefore classified as a younger individual.

In making the determination required by *Daniels* and Interpretation II–5–302(A), the factfinding required in a borderline situation extends beyond the fact of the claimant's age. In this case, however, age was the only fact considered by the ALJ.

In this regard, the Court notes that Interpretation II–5–302(A) instructs that "[t]he adjudicator need not explain his or her use of the claimant's chronological age." This instruction, however, appears to apply only in the absence of "a showing of additional adversity(ies)." The number of impairments suffered by Plaintiff makes such a showing, at the very least. Moreover, the ALJ's failure to explain his choice of age category in a borderline situation both impedes judicial review of the ALJ's application of 20 C.F.R. § 404.1563(a) and appears to violate 20 C.F.R. § 404.953, which requires that decisions include "findings of fact" and "reasons for the decision." Accordingly, the ALJ was required to make a finding which included consideration of more than just the plaintiff's chronological age.[2] *See Daniels,* 154 F.3d at 1136, 1998 WL 515160 at *6 ("[l]ike any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.").

### Conclusion

Plaintiff's age placed him in a borderline situation regarding application of the grids' age categories. The ALJ nonetheless mechanically applied the age categories, in violation of 20 C.F.R. § 404.1563(a). The Commissioner's decision must therefore be vacated and remanded to make a finding on the appropriate age category.

### ORDER

**IT IS HEREBY ORDERED** that Plaintiff's objections to the Report and Recommendation (dkt.# 17) are **SUSTAINED;**

**IT IS FURTHER ORDERED** that the Magistrate Judge's Report and Recommendation (dkt.# 16) is **REJECTED;**

**IT IS FURTHER ORDERED** that the Commissioner's decision is **VACATED;**

**IT IS FURTHER ORDERED** that the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Opinion.

---

Council Interpretation II–5–302(A), issued after *Crady,* limits ALJ discretion in borderline cases.

**2.** While having to make findings on this issue may create administrative burdens, the Commissioner has an easy solution: he may eliminate the gray area created by 20 C.F.R. § 404.1563(a). Bright line rules are permissible, even if they are, to some extent, arbitrary. *See Califano v. Aznavorian,* 439 U.S. 170, 174, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978)("Social welfare legislation, by its very nature, involves drawing lines among categories of people, lines that necessarily are sometimes arbitrary.")