**Homer CROOK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A.02–G–0847–E.**

United States District Court, N.D. Alabama, Eastern Division.

Jan. 21, 2003.

Alice H Martin, U.S. Attorney, Edward Q Ragland, U.S. Attorney's Office, Birmingham, Mary Ann Sloan, Sherri G James, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed on August 6, 1998. These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Eduardo Soto] was granted, and a hearing was held November 17, 1999.[2] The ALJ's decision to deny benefits was handed down May 6, 2000.[3] Plaintiff's request for review by the Appeals Council was denied February 1, 2002.[4]

Although plaintiff was approaching advanced age at the time of the hearing and had reached 54½ by the time of the ALJ's decision benefits were denied.

Plaintiff, presently 57, has a high school education. His past relevant work is as a galvanizer machine operator at a steel plant. He has no transferable skills.

---

R Michael Booker, R Michael Booker PC, Birmingham, for Homer Crook, plaintiff.

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. On the day of the hearing before the ALJ plaintiff was one week short of his 54th birthday. Plaintiff was born November 25, 1945.

3. On the day of the ALJ's decision plaintiff was 54½ years old. See 20 CFR § 404.1563(c) *Person approaching advanced age* (50–54) and (d) *Person of advanced age* (55 or over).

4. On the day of the decision of the Appeals Council plaintiff was 56 years old.

In reaching this decision the court has adopted the findings, but not conclusions, of the ALJ and the arguments set forth in the brief of the plaintiff. The ALJ found that plaintiff has severe impairments but that they do not qualify him for disability. He found that claimant is an "individual closely approaching advanced age." He further found that plaintiff has the residual functional capacity to perform a full range of "light work" based on Medical–Vocational Rule 202.14.

In applying age factors to determine disability status the court has specific guidelines to follow, guidelines set by the Commissioner. 20 CFR § 404.1563 *Your age as a vocational factor.*[5] The last sentence in § 404.1563(a) reads: "[W]e will not apply these (chronological) age categories mechanically in a borderline situation." Plaintiff was approaching advanced age at the time of the hearing. He had reached advanced age at the time of the decision in which the ALJ used 20 CFR Part 404, Subpt. P, App. 2, Table 2, Rule 202.14 in determining that plaintiff was not disabled. The court in *Russell v. Commissioner of Social Security,* 20 F.Supp.2d 1133 (W.D.Mich.1998) held the following:

> For purposes of determining age under the grids, 'the claimant's age as of the time of the **decision** governs.' *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 780 (6th Cir.1987) (emphasis added).

In deciding this issue, *Varley,* at 781 said: "The fact that a claimant who is unable to engage in such activity at the time of the decision may have been able to do so at some point in the past goes to the question of the onset date, not the question of disability."[6]

In reaching its decision *Russell,* 20 F.Supp.2d at 1135, cited Appeals Council Interpretation II–5–302(A)(effective Nov. 2, 1993) in interpreting borderline age situations, portions of which are set forth below:

> To identify borderline age situations when making disability determinations, adjudicators will apply a two-part test:
> (1) Determine whether the claimant's age is within a few days or a few months of a higher age category.
> (2) If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."
> If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.
> If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.)

Once a determination of the existence of a borderline situation is made, according to Interpretation II–5–302(A), it must be determined which category to use, carefully avoiding a "mechanical" application of the Regulations § 404.1563(a).

Language from Appeals Council Interpretation II–5–302 (effective March 16, 1979) states that "[g]enerally, establishing an onset date up to six months prior to attainment of the specified age would be reasonable." *Russell,* at 1135. *See Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (held that when the passage of a

---

**5.** A younger individual is under 50. A person approaching advanced age falls within the bracket of 50 to 54 years of age. A person of advanced age is 55 years old or older.

**6.** The *Varley* court rejected the Secretary's argument that the relevant time for determining plaintiff's age is either the date of the application or the date of the first hearing. The decision date controls.

few days or months would cause a shift in the results of the disability determination a borderline age situation exists); *Kane v. Heckler*, 776 F.2d 1130 (3rd Cir.1985) (Court held that it would not mechanically apply grids set in § 404.1563(a) in borderline age situations) (48 days before next age category within borderline range); *Ford v. Heckler*, 572 F.Supp. 992, 994 (E.D.N.C.1983) (two months within borderline); *Hilliard v. Schweiker*, 563 F.Supp. 99, 101–02 (D.Mont.1983) (less than three months within borderline); *Hill v. Sullivan*, 769 F.Supp. 467, 471 (W.D.N.Y.1991) (three months, two days within borderline). *But see Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir.1987) (ten months not within borderline); *Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (Seven months not within borderline).

Were age guidelines not mechanically applied to this borderline situation application of Rule 202.06 of the medical/vocational guidelines would direct a finding that plaintiff is disabled as a person of advanced age.[7] 20 CFR § 404.1569, Appendix 2, Rule 202.06. As a high school graduate with work skills that are not transferable he is disabled. Pertinent language from 202.00(c) follows:

> [F]or individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limita-

tions in vocational adaptability represented by functional restriction to light work warrant a finding of disabled. Ordinarily, even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education.

 While Rule 202.06 does not apply to Mr. Crook's disability claim as of his original disability onset date of July 21, 1998, and perhaps does not even allow for its applicability as of the date of the hearing before the ALJ, by the time the May 6, 2002, decision was rendered plaintiff was 54½ years old and should have been considered a person of advanced age. Utilization of plaintiff's chronological age in the disability equation amounts to mechanical application of the age guidelines in this borderline situation. 20 CFR § 404.1563(a).[8] The decision of the Commissioner is REVERSED. This rationale would pay benefits to the plaintiff at the time he was 54 1/2 years old pursuant to Rule 202.06.

There is an even better reason why the decision of the ALJ must be reversed and benefits awarded from an even earlier date. Medical evidence before the court from several attending physicians indicates that plaintiff can not perform "light work," as found by the ALJ. Recorded medical evidence submitted in support of Mr. Crook's application for long term disability payments through Gulf States Steel, Inc. includes the following:

1) February 23, 1999, statement from Dr. Carlos Emanuel showing that plaintiff suffers with asbestosis,[9]

---

**7.** § 404.1563(d) *"Person of advanced age.* We consider that advanced age (55 or over) is the point where age significantly affects a person's ability to do substantial gainful activity."

**8.** The court finds defendant's argument that plaintiff should have filed another application ludicrous.

**9.** Asbestosis is caused by inhalation of asbestos fibers small enough to be completely inhaled into the lungs. When they are inhaled the lung's defense mechanisms cannot break them down. These asbestos fibers remain in the lungs and cause scarring. The inflammation continues for decades. The thickening

cough induced syncope (brief loss of consciousness), chronic bronchitis and chronic obstructive pulmonary disease (chronic bronchitis and/or emphysema associated with airflow obstruction). At best, in the opinion of Dr. Emanuel, plaintiff is capable of engaging in **sedentary** type work and only in a desk job.[10]

2) February 22, 2000, statement from Dr. Mazen Hakim indicating plaintiff suffers with reactive airway disease and functional asthma. Dr. Hakim opined plaintiff is totally and permanently disabled from engaging in any productions or maintenance employment at Gulf States Steel. He indicated plaintiff is unable to perform any physical activity.

3) November 8, 1999, statement of Dr. John Just (treating plaintiff for migraine headaches, syncope, tension headaches, and hypertension) that plaintiff is totally and permanently disabled and incapable of minimal (sedentary) activity.

■ On the basis of these medical opinions plaintiff is disabled under medical/vocational guidelines because he has a residual functional capacity for no more than sedentary work. Rule 201.06 or Rule 201.14. Uncontradicted medical opinions of treating physicians are controlling. *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir.1997) (In determining whether claimant is entitled to social security disability benefits, testimony of treating physician must be given substantial or considerable weight unless good cause is shown to contrary); *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982) (The law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician."). *See also Walker v. Bowen*, 826 F.2d 996 (11th Cir.1987); *Smith v. Schweiker*, 646 F.2d 1075 (5th Cir.1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

The court holds that the decision of the Commissioner is REVERSED. Plaintiff's disability began as of the February 23, 1999, uncontroverted opinion of treating physician Dr. Carlos Emanuel in which he opined that, at best, plaintiff was incapable of engaging in anything other then sedentary work. Coupled with his age, his inability to perform anything other than sedentary work means he was disabled as of that date.

An order consistent with this opinion is being entered contemporaneously herewith.

### ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commis-

---

and scarring prevent oxygen and carbon dioxide from traveling between the tiny air sacs of the lungs and into the blood stream. Breathing becomes much less efficient. Once started the inflammatory process continues to progress. Early symptoms typically include shortness of breath, coughing, a dry crackling sound while inhaling, and chest pain. Related serious conditions are Mesothelioma (asbestos-related cancer for which there is no cure), heart disease, and lung cancer. *Asbestosis-info.com health and legal information, available at* http://www.asbestosis-info.com/cancer.html (last visited January 14, 2003).

**10.** At his age, *approaching advanced age,* the inability to do more than sedentary work means he is disabled.

sioner of Social Security be and it hereby is REVERSED, and the case is RE-MANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.