983 F.2d 1066
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur FLEENOR, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 92-5082.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1992.
 
 Before KEITH, NATHANIEL R. JONES and BOGGS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Arthur Fleenor appeals the denial of his application for social security disability benefits. We affirm.
 
 
 2
 * Arthur Fleenor filed an application in August 1989, for alleged disabilities commencing May 26, 1989, on the basis of problems with his left leg and foot, breathing difficulty, and a nervous condition. Fleenor claimed that these disabilities precluded him from any work activity requiring medium or heavy physical exertion, or a significant amount of walking or standing.
 
 
 3
 Fleenor was born November 11, 1945, and is currently 46 years old. He performed various unskilled labor jobs from 1976 to 1989. Fleenor's main physical complaint is a clubfoot deformity that has been present since birth but has grown more severe in recent years. Based on evidence submitted from two treating physicians, Dr. Knickerbocker and Dr. Sherrill, the Administrative Law Judge (ALJ) determined that the clubfoot deformity was a severe musculoskeletal impairment. This determination is not disputed; however, the severity of several other alleged physical impairments and their effect on Fleenor's vocational ability are disputed.
 
 
 4
 Fleenor claims to have trouble breathing. The trouble appears to be caused, at least partially, by many years of cigarette smoking. The ALJ determined that medical records established that the breathing problems were indicative of only very mild obstructive disease. Fleenor was shot in April 1968, and he underwent surgery for a gunshot wound to the chest. However, there is no evidence in the record that this injury has any residual effects on his breathing.
 
 
 5
 Fleenor also claims to suffer from alcoholism. He claims to drink roughly twelve beers a day to help ease the pain caused by his clubfoot and arthritis, and to calm a nervous condition he claims to have suffered since the gunshot incident. This pattern of substantial beer consumption appears to stretch back over twenty years. No medical evidence was presented that showed any problems associated with alcoholism. Nor was any evidence presented that alcoholism had interfered with previous employment.
 
 
 6
 Fleenor also claims to suffer from "nerves." There is no objective evidence that his alleged nervous condition has interfered with past employment. No medication has been prescribed for any emotional or psychiatric problems.
 
 
 7
 Finally, Fleenor claims to suffer from arthritis. Although Fleenor may have some pain, there is no medical evidence that this is a severe impediment.
 
 
 8
 In general, the treating physicians' medical examinations show that Fleenor is capable of standing or walking for up to two hours in a day. He is capable of sitting up to six hours a day with occasional breaks.
 
 
 9
 Fleenor has seven years of education. He testified that he can read a little bit and that he can print. His sister testified that she wrote checks for him when he had a checking account because he could only write his name. Dr. Sherrill noted several times that Fleenor cannot spell. The disability form indicated that Fleenor could read and write a little bit, but it also indicated that his wife read the form to him.
 
 
 10
 Fleenor's application for benefits was denied. After a hearing, the ALJ also found Fleenor not disabled. The Appeals Council denied Fleenor's request for review.
 
 
 11
 Fleenor sought review in federal district court. On December 6, 1991, a magistrate recommended a finding that substantial evidence supported the Secretary's decision that Fleenor was not entitled to benefits and recommended that the district court grant the Secretary's motion for summary judgment. On December 30, 1991, the district court adopted the magistrate's recommendation in full.
 
 II
 
 12
 Under 42 U.S.C. § 405(g), this court must uphold the Secretary's factual findings if they are supported by substantial evidence. The ALJ's findings represent the Secretary's final findings. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). To determine whether the ALJ's findings are supported by substantial evidence we must examine the record as a whole and "must take into account whatever in the record fairly detracts from its weight." Tyra v. Secretary of Health and Human Services, 896 F.2d 1024, 1028 (6th Cir.1990) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If supported by substantial evidence, the ALJ's determination must be upheld even if we would resolve the issues of fact differently. Ibid.
 
 III
 
 13
 Fleenor had the initial burden to establish that he cannot perform his past relevant work. When the ALJ determined that Fleenor met his burden of proof, the burden shifted to the Secretary to show that Fleenor can perform other "substantial gainful activity that exists in the national economy." Buress v. Secretary of Health and Human Services, 835 F.2d 139, 142 (6th Cir.1987). Fleenor contends that the district court's determination that the Secretary met his burden is not supported by substantial evidence.
 
 
 14
 First, Fleenor argues that the classification of Fleenor as a "younger individual" is not supported by substantial evidence. A "younger individual" is defined by the regulations as a person eighteen to forty-four years old. At the time of the ALJ's decision Fleenor was only five months shy of his forty-fifth birthday. Fleenor argues that he should have been included in the next older age category. An ALJ is not required to apply the age categories mechanically and does have discretion to move a borderline claimant up to the next age category. However, "[t]he fact that age categories are not to be applied mechanically ... obviously does not mean that a claimant must be moved mechanically to the next age category whenever his chronological age is close to that category." Crady v. Secretary of Health and Human Services, 835 F.2d 617, 622 (6th Cir.1987).
 
 
 15
 Fleenor bases his argument that he should be treated as if older than his chronological age on Dr. Sherrill's opinion that Fleenor would be difficult to retrain because of his poor health and lack of skills. However, Dr. Sherrill's opinion concerning Fleenor's job skills does not undermine the ALJ's determination. As we have stated:
 
 
 16
 the ALJ has the opportunity to observe the claimant in person, and especially in those cases where there is no suggestion in the evidence before the ALJ that there is some reason the person should be treated as older than his chronological age, it is for the ALJ to determine which age category to place the plaintiff and, thus, which rules in the grids to apply.
 
 
 17
 Crady, 835 F.2d at 622. Therefore, we will not disturb the ALJ's classification of Fleenor as a younger individual.
 
 
 18
 Next, Fleenor contends that substantial evidence does not support the determination that he can do a full range of sedentary work. Under the regulations, sedentary work is defined as work that:
 
 
 19
 involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
 
 
 20
 20 C.F.R. 404.1567(a); see also Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work--The Medical-Vocational Rules of Appendix 2 (1983) (limits standing or walking to two hours of an eight hour work day). Both doctors' assessments of Fleenor's capabilities are consistent with a finding that he can perform sedentary work. Dr. Knickerbocker recommended a job that would limit Fleenor's walking or standing to two hours a day. Moreover, Dr. Knickerbocker affirmatively stated in a letter that Fleenor's abilities met the definition of sedentary work. Dr. Sherrill's evaluations are consistent with Dr. Knickerbocker's assessment and the definition of sedentary work.
 
 
 21
 Fleenor bases his argument primarily on isolated material from forms completed by the doctors. Standing alone, these items are open to different interpretations. Thus, it would be best to rely on the physicians' own interpretations as expressed in the letters and forms where they specifically addressed Fleenor's ability to do sedentary work. The two treating physicians' opinions constitute substantial evidence; therefore, we hold that substantial evidence supports the determination that Fleenor is capable of performing a full range of sedentary work.
 
 
 22
 Once the ALJ determined that Fleenor could not perform his past unskilled labor job, the burden shifted to the Secretary to show that Fleenor can perform other "substantial gainful activity that exists in the national economy." Buress v. Secretary of Health and Human Services, 835 F.2d at 142. That burden can be met, however, by reference to the medical vocational guidelines, or "grids," unless Fleenor can show that he suffers from nonexertional limitations that significantly limit the range of work he can perform. Ibid. The Sixth Circuit stated in Cole v. Secretary of Health and Human Services, 820 F.2d 768, 771 (6th Cir.1987):
 
 
 23
 A nonguideline determination is required only if "the nonexertional limitation restricts a claimant's performance of a full range of work at the appropriate residual functional capacity level...." A mere allegation of nonexertional limitations is not sufficient to preclude application of the grid: the determining factor is whether the alleged nonexertional impairment is severe enough to alter the conclusion that the claimant could do a full range of sedentary work.
 
 
 24
 Nonexertional impairments are defined as "impairments which affect ... use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of fingers for fine activities." Social Security Ruling 83-10, at 180. Dr. Knickerbocker stated that the clubfoot adversely affects Fleenor's ability to walk on heels or toes, squat, arise from a squatting position, and carry. Dr. Sherrill concluded that Fleenor's abilities to walk on heels and toes, stoop, reach, and carry are adversely affected. However, neither physician commented on the severity of these impairments. Furthermore, in the same communications, both physicians indicated that they thought Fleenor could perform sedentary work. The only reservations they expressed related to his inability to spell, not his physical limitations. Therefore, we find that reliance on the medical vocational guidelines was appropriate in this case.
 
 
 25
 Finally, Fleenor contends that substantial evidence does not support the determination that he has a marginal education. Marginal education is defined as: "ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled type jobs. We generally consider that formal schooling at a 6th grade level or less is marginal education." 20 C.F.R. § 404.1564(b)(2). Illiteracy, the category below marginal education, is defined as "... the inability to read and write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." 20 C.F.R. 404.1564(b)(3).
 
 
 26
 A finding of illiteracy would change the outcome in this case only if we also found that the Secretary erred in placing Fleenor in the category of persons eighteen to forty-four or if we determine that a mechanical application of the grid system was inappropriate. Because we affirmed the district court's findings on both of these issues, whether Fleenor is illiterate or marginally educated is irrelevant to the outcome of this case. At present, however, Fleenor is forty-six and has filed a new protective claim with the expectation of being placed in the category of person forty-five to forty-nine years old. In this category, a person who is illiterate and can perform only sedentary work is categorized as disabled under Rule 201.17. 20 C.F.R. § 404, Subpt. P, App. 2. Therefore, because we are troubled by the ALJ's classification of Fleenor as marginally educated and because this classification could be argued to bar, by res judicata, a contrary finding in any future proceedings, we will briefly address this issue.
 
 
 27
 We do not believe there is substantial evidence in the record to support the ALJ's conclusion that Fleenor is marginally educated. There is scant evidence in the record that Fleenor has any ability to read. At the hearing, Fleenor testified that he attended school up to the seventh grade, but he also testified that he "failed a lot of years." Fleenor testified that he "can read a little bit. I can't write, I print." When he was asked if he could make a grocery list, Fleenor answered "un-huh." There is no evidence at all that Fleenor can perform simple arithmetic.
 
 
 28
 This sparse evidence is rendered even less substantial by evidence that Fleenor's reading and writing skills are quite poor. His sister testified that when Fleenor had a bank account she did his check book for him "because all he can write is his name." Dr. Sherrill noted several times that Fleenor's inability to spell would make it hard for him to find sedentary employment. Finally, a social worker noted on Fleenor's disability form that Fleenor's wife read the form to him.
 
 
 29
 Therefore, we overturn the district court's finding that the ALJ's determination that Fleenor is marginally educated is not supported by substantial evidence. This does not mean that we find that substantial evidence supports a classification of Fleenor as illiterate. On the contrary, we simply find that this record is lacking in reliable evidence to support any classification of Fleenor's education and mental abilities.
 
 IV
 
 30
 For the foregoing reasons, we AFFIRM the district court's order.