**Gilda Marie ELLIOTT, On Behalf of Glen Elliott, Deceased, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.**

No. 00–5500.

United States Court of Appeals, Sixth Circuit.

Jan. 22, 2002.

BATCHELDER, Circuit Judge.

Gilda Marie Elliott ("Gilda") appeals a decision that denied Social Security and federal disability benefits for her now-deceased husband, Glen Elliott ("Glen"). She also appeals denial of Glen's motion to remand the case to the Administrative Law Judge ("ALJ") to consider what she says is new and material evidence. We affirm the district court because where, as here, the Appeals Council declines to review a case, we cannot consider evidence not first presented to the ALJ. We also affirm because, under the substantial-evidence standard, we cannot say that the ALJ erred when he ruled in 1997 that Glen was not disabled under the Social Security Act (the "Act"). And we affirm the denial of Glen's motion to remand because the evidence that Gilda says is new and material (Glen's death certificate, for example) is neither new nor material under the applicable law.

### FACTS & PROCEDURAL BACKGROUND

Glen suffered a heart attack while on the job in April 1995. The heart attack stopped Glen's breathing and damaged his brain. Within days of the heart attack, Glen underwent double by-pass surgery. Within two weeks of his heart attack, Glen applied for Supplemental Security Income ("SSI") payments. Shortly thereafter, Glen also applied for Disability Insurance Benefits. His claims were denied initially and on reconsideration. Glen appealed his case to an ALJ.

The ALJ held a hearing and took Glen's testimony. Glen testified that he could walk no more than 200 feet without discomfort. (This contrasted sharply to what

Before RYAN and BATCHELDER, Circuit Judges; MATIA *, District Judge.

* The Honorable Paul R. Matia. Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

Glen told his doctors in 1995 after his heart attack—that he was walking between one and two miles a day.) Glen also testified that he suffered from chest pains, even though Glen apparently never told his doctors that he was suffering chest pains. The gist of Glen's testimony was that he was unable to do much of anything, including housekeeping, mowing the lawn, or cooking. Glen said that he was sedentary because he was afraid that too much physical exertion might bring on a fatal heart attack.

The ALJ also took testimony from a vocational expert, who testified that Glen could do either light or sedentary work. But the expert also testified that Glen could not go back to construction work. Moreover, the vocational expert said that if the ALJ chose to credit Glen's testimony, the ALJ should conclude that Glen could not do any kind of work.

After Glen's lawyer questioned the vocational expert, the ALJ told Glen's lawyer that Glen would need to undergo a functional-assessment test. Glen's lawyer agreed to have his client take the test. With that, the hearing ended.

About three months after the hearing before the ALJ, Glen went to Dr. Karl Konrad for a functional-assessment test. Dr. Konrad administered the test and concluded that Glen could perform a variety of tasks, including:

sitting, standing, or walking up to four hours a day;

lifting between 21 and 50 pounds frequently;

lifting up to 20 pounds continuously.

The ALJ considered Dr. Konrad's report. After considering the evidence and weighing Glen's credibility in the light of all the evidence, the ALJ decided that Glen was not disabled under the Act. The ALJ based his decision upon his finding that Glen could adjust and do other work, such as the light or sedentary work about which the vocational expert had testified. For example, the ALJ found that Glen could work as an assembler, machine operator, security monitor, or cashier. That finding rested, in part, upon evidence from Glen's exercise stress test, which showed that "Glen's functional capacity was judged to be that of the average person."

Glen appealed the ALJ's decision to the Appeals Council and introduced additional evidence that he had not presented to the ALJ. That additional evidence included:

medical records dated Apr. 27, 1998 to July 23, 1998;

medical report from Dr. Knight, dated Jan. 5, 1998;

medical records dated Mar. 12, 1997 to Jan. 19, 1998;

a letter from Glen's lawyer, dated Nov. 24, 1997.

The letter from Glen's lawyer explained the basis for Glen's appeal. The letter said that the ALJ should have accounted for Glen's professed fear of doing any kind of physical activity. The letter referred to this fear as "post-traumatic stress disorder."

Glen offered the Appeals Council no other grounds for reversing the ALJ. He limited his arguments about disability and residual function capacity to the ALJ's failure to factor in Glen's professed fears. That is, Glen argued that the ALJ erred because the ALJ chose not to credit Glen's testimony about how afraid Glen was to do much of anything for fear of bringing on a fatal heart attack.

After considering the new evidence that Glen offered, the Appeals Council decided not to review Glen's case. Glen appealed that decision to the federal district court. Both Glen and the government moved for summary judgment. Glen also moved to

remand the case to the ALJ so that the ALJ could consider the additional evidence. The federal district judge referred the matter to a magistrate for a Report and Recommendation ("R & R").

The magistrate reviewed the additional evidence that Glen argued the ALJ should consider on a remand. The magistrate concluded that the additional evidence—an assessment about Glen's mental health—was "contradicted by virtually all of the mental health evidence of record." The magistrate concluded that the additional evidence would not have produced a different result even if Glen had presented that additional evidence to the ALJ.

The magistrate recommended that the district court deny Glen's motion for summary judgment, grant the government's motion, and deny Glen's motion to remand the case to the ALJ. By the time the magistrate issued his R & R, Glen's fears had been realized; another heart attack had struck and killed him. The district court entered an order substituting Gilda for Glen, and Gilda timely objected to the magistrate's R & R.

Gilda argued that the magistrate judge should have considered the additional evidence that the Appeals Council evaluated when it declined to review Glen's case. Gilda said that because an order from the Appeals Council made the additional evidence part of the record, federal courts must review such evidence. To that end, Gilda contended that this court's opinion in

Cotton v. Sullivan, 2 F.3d 692 (6th Cir. 1993), was wrongly decided or that Cotton did not apply. Gilda also maintained that the magistrate erred when he concluded that substantial evidence supported the ALJ's decision. Gilda said that the ALJ implicitly rejected a doctor's report about Glen's residual functional capacity. For support, Gilda pointed to the additional evidence—evidence that Glen had not presented to the ALJ.

The district court adopted the magistrate's R & R, and Gilda appealed.

## DISCUSSION

If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir.1996); Cotton, 2 F.3d at 696.[1] When such evidence is offered, the court may remand the case to the ALJ. See Cline, 96 F.3d at 148 ("The district court can, however, remand the case[.]"). But remands are permitted only in limited circumstances.

The limited circumstances under which remands are permitted arise when the party seeking remand shows that: (1) new and material evidence is available; and (2) good cause exists for not first presenting the evidence to the ALJ. See Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (6th Cir.1984). New evidence must indeed be new; it cannot be cumulative of evidence already in the record. See

---

1. *See also Osburn v. Apfel,* 1999 WL 503528, at *4 (6th Cir. July 9, 1999) ("[W]hen the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Commissioner ... Since we may only review evidence that was available to the ALJ to determine whether substantial evidence supported her decision, *we cannot consider evidence newly submitted on appeal after the hearing before the ALJ."* (emphasis added)); *Wyatt v. Sec'y of Health & Human Servs.,* 1993 WL 492311, at *3 & n. 2 (6th Cir. Nov.29, 1993) ("We must therefore treat the post-hearing evidence submitted to the Appeals Council no differently than evidence submitted for the first time to us."); *Micus v. Bowen,* 979 F.2d 602, 606 n. 1 (7th Cir.1992) (stating that courts do not consider new evidence presented to the Appeals Council when reviewing the Secretary's final decision because the ALJ did not have access to it).

*Robertson v. Shalala*, 1996 WL 384542, at *3 (6th Cir. July 8, 1996).[2] New evidence is material when the movant shows a reasonable possibility that the evidence would have changed the outcome of the ALJ's decision. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988).

We review for abuse of discretion a district court's denial of a claimant's motion to remand. *See Floyd v. Sec'y of Health & Human Servs.*, 1991 WL 43923, at *6 (6th Cir. Apr.1, 1991).[3] A district court abuses its discretion if it relies upon clearly erroneous findings of fact; if it improperly applied the law; or if it used an erroneous legal standard. *See Fleischut v. Nixon Detroit Diesel*, 859 F.2d 26, 30 (6th Cir. 1988).

I

Gilda argues that *Cotton* and *Cline* were wrongly decided. She claims that the Appeals Council's order makes the additional evidence a part of the record and that the government is judicially estopped from saying otherwise. Consequently, Gilda argues, we must review the whole record, additional evidence and all. The magistrate rejected Gilda's argument and cited *Cotton*. The district court adopted that holding.

■ We must follow our published decisions if they apply. *See Meeks v. Illinois Cent. Gulf R.R.*, 738 F.2d 748, 751 (6th Cir.1984) ("[A] panel of this court may not overrule a previous panel's decision. Only [a]n en banc court may overrule a circuit precedent, absent an intervening Supreme Court decision."). *Cotton* and *Cline* apply here because the Appeals Council refused to review Glen's case. Therefore, the record that we review is limited to the record that the ALJ reviewed. The only evidence to which Gilda points to support her claims is evidence that was first presented to the Appeals Council. Because Glen did not present that evidence to the ALJ, the ALJ did not consider it. Consequently, we hold that the district court properly refused to consider the evidence first presented to the Appeals Council.

Gilda argues that this case should be remanded to the ALJ for consideration of Glen's death certificate and final medical reports from the hospital where Glen died. Gilda claims that the death certificate and final medical reports qualify as new and material evidence under *Willis*. Gilda argues that this evidence shows that Glen's heart condition was much worse than the ALJ believed and that this is not a case of a deteriorating condition. She assails the magistrate's denying her motion to remand because, she says, "[t]he Magistrate concluded, without explanation, that the Sycamore Shoals records and Glen's death certificate did not warrant remand."

■ Gilda must show that the magistrate abused his discretion when he denied the remand motion. To do that, Gilda would have to show that Glen's death certificate and final medical reports qualify as

2. *See also Bailey v. Comm'r of Soc. Sec.*, 1999 WL 96920, at *5 (6th Cir. Feb.2, 1999) (Remand inappropriate when remand would facilitate only the presentation of cumulative evidence); *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir.1990) (Cumulative evidence is not material evidence).

3. *See also Johnson v. Heckler*, 1985 WL 13306, at *2 (6th Cir. May 24, 1985) ("Thus, the district court did not abuse its discretion by refusing to remand the case to the Secretary."); *cf. Willis*, 727 F.2d at 554 ("It is clear from our reading of the legislative history that this provision was enacted, at least in part, *to limit the discretion of federal judges to remand for consideration of new evidence*" (emphasis added)).

new and material evidence under *Willis*, and that in light of that evidence there is a reasonable possibility that the ALJ's conclusion would have been different. Gilda fails to make that showing because the purportedly new evidence is not new at all; it is merely cumulative. Moreover, we think that the purportedly new evidence is not enough to undo the ALJ's conclusion that Glen was not disabled under the Act in 1997, when the ALJ issued his ruling.

The fact that Glen's heart trouble ultimately killed him does not demonstrate that the ALJ's ruling in 1997 was not supported by substantial evidence. Neither the purportedly new and material evidence nor the evidence that was before the ALJ shows that Glen's heart condition was much worse than anyone thought in 1997. For example, nothing about the evidence appears to undermine the results of the exercise study or the many medical reports where doctors found no angina. Given that, we conclude that Gilda fails to demonstrate a reasonable probability that the information contained in Glen's death certificate and final medical reports could affect the ALJ's conclusion that Glen was not disabled under the Act when the ALJ issued his ruling.

Gilda's new evidence merely reconfirms that Glen suffered from heart trouble. Gilda's arguments here repeatedly compare the purportedly new evidence to evidence that was before the ALJ and urge that the new evidence adds to or supports evidence that favored a finding of disability.

Gilda's purportedly new evidence might show that Glen's condition worsened between 1997 and 1999. After all, Glen's heart condition killed him in October 1999. But if that is what the purportedly new evidence would show (and we think that is just what it would show), then a remand is not permitted. Hence, we AFFIRM the denial of Glen's motion to remand.

II

The ALJ found that Glen was "not able to perform jobs which require unimpaired sight or standing, sitting, or walking for more than four hours at a time[.]" The magistrate judge found that Dr. Galloway's treatment notes said Glen "may return to work." And the magistrate judge noted that Dr. Konrad's assessment would permit Glen to do even more than the ALJ gave Glen credit for. The district court adopted those findings.

Gilda says that the ALJ erred because the ALJ relied "on his own subjective assessment of the severity of Glen's condition." To support that argument, Gilda says that Glen remained disabled from the heart surgery because his surgeon never released him to go back to work. And she says that the treadmill results (on which she says the ALJ relied) were not good because the test ended after only three minutes when Glen ran out of breath. Gilda also contends that the ALJ rejected Dr. Konrad's assessment.

We review an ALJ's determinations to see if they are supported by substantial evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) ("At the outset it should be noted that the ALJ's findings are not to be overturned unless there is no substantial evidence supporting such conclusions."). If substantial evidence supports the ALJ's decision, then that decision is conclusive. *See Floyd v. Finch*, 441 F.2d 73, 75 (6th Cir.1971). Substantial evidence means that the ALJ's conclusions rest on enough relevant evidence that a reasonable person could accept the ALJ's conclusions, even if

that person might arrive at a different conclusion. The substantial-evidence standard gives ALJs a "zone of choice" in which they can go either way, without being second-guessed by federal courts. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986).

When courts apply this substantial-evidence standard, they may not resolve conflicts in the evidence or decide questions of credibility. *See Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir.1972). But courts cannot endorse an ALJ's decision when that decision focuses on one piece of evidence and disregards other pertinent evidence. *See Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). To that end, when courts apply the substantial-evidence standard, courts must account for whatever in the record fairly detracts from the weight of the substantial evidence. *See Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978). And reports by doctors who have treated the claimant for years should receive more weight than do reports by doctors that the government hires to defend against the claimant's application for disability benefits. *See Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980).

■ The record here supports the ALJ's findings because: (1) an exercise test showed that Glen performed as would most other people; (2) Glen's doctor said that Glen could return to work; and (3) another doctor found that Glen could do some physical work with the limitation that Glen could sit or stand for no more than four hours. The sum total of the evidence in this record is that Glen could probably have done more work than the ALJ found that Glen could do. Consequently, we AFFIRM the ALJ's finding that Glen was not disabled under the Act.

## III

Finally, we come to Gilda's complaints about the hypotheticals offered by the vocational expert who testified at the hearing before the ALJ. Gilda argues that the ALJ's finding that Glen could perform light or sedentary jobs was error because it was based on erroneous hypotheticals.

When we review the hypotheticals posed by an ALJ to a vocational expert, we ask if evidence in the record supports the hypothetical. If at least one doctor's opinion or report would support the question, we will not conclude that the questions were erroneous. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927–28 (6th Cir.1987) ("[Claimant] contends that there is no evidence to support a conclusion that he can perform sedentary work. However, at least one doctor did state that [claimant] could perform sedentary work. Therefore, there is some evidence in the record to this effect. Consequently, the hypothetical questions were not erroneous.").

The ALJ cited a medical report which stated that "if [Glen's] exercise test is good, he can probably resume vigorous physical activity." The ALJ then noted that the exercise test results were good. Under *Hardaway*, that is enough.

For the foregoing reasons, we AFFIRM in all respects the judgment of the district court.