**Nichole PICKARD, Plaintiff,**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. 01–2711–MA/BRE.**

United States District Court, W.D. Tennessee, Western Division.

Sept. 23, 2002.

Lester T. Wener, Matthew S. Russell, Memphis, Tennessee, for plaintiff.

William W. Siler, Assistant United States Attorney, Memphis, Tennessee, for defendant.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

MAYS, District Judge.

On September 7, 2001, the plaintiff Nichole Pickard filed a Social Security appeal with this court seeking judicial review of the decision of the Commissioner of Social Security in denying her application for disability and supplemental security insurance benefits. The matter was referred to Magistrate Judge J. Daniel Breen for report and recommendation. On July 23, 2002, Magistrate Breen filed his Report and Recommendation, which recommended that this matter be remanded to the Administrative Law Judge for the purpose of allowing the ALJ to consider new evidence presented by the plaintiff. The magistrate judge's Report and Recommendation also advised the parties that any objections to the magistrate judge's recommendations were to be filed within ten days or that they might be deemed waived by this court. Neither party has filed any objections to the magistrate judge's Report and Recommendation and, in fact, the Commissioner has affirmatively advised the court that the Commissioner will not file any objection or exception to the magistrate's Report and Recommendation.

Having reviewed the record in this case, along with the magistrate judge's Report and Recommendation, the court concludes that the findings and conclusions of the magistrate judge are correct. The Report and Recommendation of the magistrate judge is therefore adopted by this court. Accordingly, the matter is remanded to the

ALJ for the reasons articulated in the magistrate judge's report and recommendation.

## REPORT AND RECOMMENDATION

BREEN, United States Magistrate Judge.

The plaintiff, Nichole Pickard, appeals from a decision of the Commissioner of Social Security denying her application for disability and supplemental security insurance benefits. The appeal has been referred to the undersigned for report and recommendation.

## PROCEDURAL HISTORY

■ Pickard filed applications for disability insurance benefits on September 27, 1999 alleging disability having an onset date of September 1, 1999. (Transcript at pages 42–44, hereafter "TR _____") She was also deemed to have applied for supplemental security income on October 1, 1999. (*See* TR 14) The applications were denied initially and upon reconsideration. (TR 23–25, 29–37) The plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), but prior to the hearing advised the ALJ, through counsel, that she wished to have the matter decided on the record. (TR 38–41, 146) ALJ Anthony Fava denied plaintiff's application in a decision dated December 20, 2000. (TR 14–21) The Appeals Council initially denied Pickard's request for review on July 9, 2001. (TR 7–8) On August 11, 2001, the Appeals Council vacated its earlier decision in order to consider additional evidence and arguments, but again concluded that there was no basis for granting a request for review. (TR 4–6) Based on that determination, the ALJ's decision became the final decision of the Secretary. Plaintiff filed this action seeking review of the final decision of the Secretary pursuant to 42 U.S.C. § 405(g). In her brief, the claimant first argues that the ALJ erred in failing to analyze her claim under the Medical–Vocational Guidelines (the "grids") as a borderline age situation. Thus, she contends, the decision of the ALJ was not supported by substantial evidence. Second, Pickard avers that remand of this matter to the Commissioner for further proceedings is appropriate based on the existence of new and material evidence.

## THE FIVE–STEP EVALUATION

A multi-step evaluation set forth in the Social Security Regulations (the "Regulations") is utilized to determine whether a claimant is entitled to social security benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a) (2001). If it is found at any step in the analysis that the claimant is not disabled, the claim is not reviewed further. 20 C.F.R. §§ 404.1520(a), 416.920(a) (2001). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b) (2001). Second, she must suffer from a severe physical or mental impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2001). The ALJ must at the third step determine whether the claimant has an impairment that meets or equals the criteria contained in the Regulations' listing of impairments set out in appendix 1 thereto. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2001). If a claimant's impairment meets or equals a listing, she is found disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d) (2001). In the event the ALJ decides that a listed impairment has not been met or equaled, he must then move to the fourth step in the analysis and consider the claimant's residual functional capacity[1] and the physical

---

**1.** "Residual functional capacity" is defined in the Regulations as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c) (2001).

and mental demands of her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e) (2001). If the claimant is still capable of performing her past work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e) (2001). Upon a determination that the claimant cannot engage in her past relevant work, the ALJ must advance to the fifth and final step of the evaluation and analyze whether the claimant can perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2001). In doing so, he is to consider residual functional capacity along with vocational factors including age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2001). At this stage, the ALJ may employ the Grids in reaching his determination. *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir.1990). If the ALJ concludes that there is no other work the claimant can perform, she is found to be disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2001). The burden of proof lies with the claimant at steps one through four and shifts to the Commissioner at step five. *Her v. Commissioner of Soc. Sec.,* 203 F.3d 388, 391 (6th Cir.1999).

## THE ALJ'S DECISION

After considering the medical record, the ALJ determined that Pickard was not under a disability as defined in the Social Security Act (the "Act"). (TR–35) Utilizing the multi-step evaluation process set forth in the Regulations, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since September 1, 1999.

2. The medical evidence establishes that the claimant has severe impairments under the Act in the nature of status post metaplastic carcinoma of the breast with modified radical mastectomy, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's statements and allegations are credible only to the extent that she is limited to light work activity.

4. The claimant has the residual functional capacity to lift twenty pounds occasionally and ten pounds frequently and stand and/or walk and sit for six hours in an eight-hour workday (20 CFR 404.1545 and 416.945).

5. The claimant cannot perform her past relevant work.

6. The claimant has the residual functional capacity to perform the full range of light work (20 CFR 404.1567 and 416.967).

7. The claimant is 54 years old, which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a general equivalency diploma (20 CFR 404.1564 and 416.964).

9. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material.

10. Section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16 and Rule 202.11, Table No. 2 of Appendix 4, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, she is not disabled.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through

the date of this decision (20 CFR 404.1520(f) and 416.920(f)). (TR 17–18).

## STANDARD OF REVIEW

Judicial review of the Secretary's decisions is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards. Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. [The] court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility.

In determining the existence of substantial evidence, [the] court must examine the administrative record as a whole. If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.

*Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994) (internal citations omitted).

## THE PLAINTIFF'S CONDITION

As the plaintiff's arguments in this appeal are narrowly drawn, it is not necessary to summarize all of the medical records in detail. Plaintiff was born on April 21, 1946 and was 54 years old on the date the ALJ rendered his decision. (TR 10) On March 31, 1999, a medical examination was conducted by plaintiff's physician, Dr. Jesse Woodall, which revealed a two by two centimeter hard mass in the right breast. (TR 117) After a biopsy performed by George E. Woodman, M.D., in April 1999 indicated metaplastic carcinoma, Pickard underwent a modified radical mastectomy with a TRAM flap, followed by reconstructive surgery. (TR 81–111)

In an Activities of Daily Living Questionnaire completed in March 2000, the plaintiff related that she had lost partial use of her right arm as a result of the cancer and surgery. She stated that the arm was painful all of the time and that the pain made it difficult for her to concentrate. Pickard reported that she prepared her own meals, generally consisting of sandwiches and canned soups, and was assisted in performing household chores and shopping by her son. (TR 67–73) She ate quick foods because she was a student and did not have time to cook. On a state disability reconsideration form filled out around the same time, she stated that

> [m]y right arm is still giving me considerable amounts of pain. I am not able to carry much with it, do any typing or hold my arm up for any period of time, or do anything that would require repetative [sic] activity with that arm. I have had considerable problems with memory, concentration and thinking.

(TR–76) The claimant was also examined in March 2000 by a psychologist at the request of the state disability agency. Pickard told the examiner she had lost much of the use of her right arm since the breast surgery and could not raise it very high. She further related that she felt "bruised" on the right hand, even though no bruising was visible, and experienced unspecified wrist pain and numbness on the right arm near the breast. The surgeries and related pain resulted in feelings of anxiety and depression. The plaintiff reported that she managed her own household, performed housekeeping chores and cleaning, and provided her own transportation, although her son occasionally helped with general shopping. She further stated that she attended school. It was determined she suffered from adjustment disor-

der with mixed emotional features secondary to the surgeries. (TR 124–30)

In a letter dated November 7, 2000, counsel for plaintiff informed the ALJ that "Miss Pickard indicated since that [breast] surgery, she has lost much use of her right arm and cannot raise it very high. She has indicated continuous pain as a result of the surgeries." He further stated that

Miss Pickard indicates that she has crying spells daily, has problems concentrating, has difficulty sleeping, problems with memory. She use [sic] to live alone but now has the assistance of her son who has moved in with her. She use [sic] to have an active life but no longer. She at the time of the exam attempted to go back to school at Shelby State junior college but was not able to pass the remedial algebra due to inability to concentrate the constant pain and having to under go [sic] the afore mention [sic] surgeries and can not complete the course. She had to drop out.

(TR 146–47)

It was the opinion of the ALJ that the claimant's symptoms, including pain, were not supported by objective evidence and that her statements concerning her limitations were inconsistent. Therefore, the ALJ concluded that her complaints were not fully credible. Specifically, the ALJ found that

[t]he claimant reports problems with pain and numbness in her right arm as a result of her surgeries, that she has only partial use of her right dominant arm, and that she cannot do any thing that requires repetitive activity with that arm. There has been no objective evidence presented, however, that establishes that she has any limitations in the use of her right arm. When seen by Dr. Weiss in March 2000, the claimant reported chronic right arm pain, but there is no mention of any significant problems with pain prior to that time and there were no objective findings of any limited range of motion or decreased strength in her arm.

(TR 16–17) Based on the medical evidence and considering the plaintiff's allegations, the ALJ determined that Pickard was capable of lifting 20 pounds occasionally and ten pounds frequently and standing and/or walking and sitting for six hours in an eight-hour day. (TR 17) She had, in his opinion the residual functional capacity to perform a full range of light work. Light work is defined in the Regulations as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

## PLAINTIFF'S CONTENTIONS AND ANALYSIS

### Age Determination.

In her motion for summary judgment, plaintiff first argues that the ALJ erred in finding she was not disabled based on Rule 202.11, Table No. 2 of Appendix 4, Subpart P, Regulations No. 4. Rather, she maintains, he should have analyzed her claim under Rule 202.02 as a borderline age situation. For purposes of determining age under the grids, "the claimant's age as of the time of the decision governs." *Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir.1987). Under the Regulations, the claimant's chronological age is considered "in combination with [her] residual functional capac-

ity, education, and work experience" in determining whether she is disabled and, therefore, eligible for benefits. 20 C.F.R. §§ 404.1563(a), 416.963(a) (2001). In doing so, the Commissioner utilizes the following age categories set forth in the Regulations: (1) a younger person (under age 50), (2) a person closely approaching advanced age (age 50 to 54), and (3) a person of advanced age (age 55 or older). 20 C.F.R. §§ 404.1563(b)–(e), 416.963(b)–(e) (2001). The Commissioner is instructed by the Regulations not to "apply the age categories mechanically in a borderline situation. If [the claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [she] is disabled, [the Commissioner is to] consider whether to use the older age category after evaluating the overall impact of all the factors of [her] case." 20 C.F.R. §§ 404.1563(b), 416.963(b) (2001). The Sixth Circuit has cautioned that "[t]he fact that age categories are not to be applied mechanically, however, obviously does not mean that a claimant must be moved mechanically to the next age category whenever [her] chronological age is close to that category." *Crady v. Secretary of Health & Human Servs.*, 835 F.2d 617, 622 (6th Cir.1987).

The Social Security Administration, in its Hearings, Appeal and Litigation Law Manual (commonly referred to by its acronym "HALLEX"), a resource to be used by its employees, has set forth the following two-part test for identifying borderline age situations:

1. Determine whether the claimant's age is within a few days or a few months of a higher age category.

2. If so, determine whether using the higher age category would result in a decision of "disabled" instead of "not disabled."

If the answer to one or both is "no," a borderline age situation either does not exist or would not affect the outcome. The adjudicator will then use the claimant's chronological age.

If the answer to both is "yes," a borderline age situation exists and the adjudicator must decide whether it is more appropriate to use the higher age or the claimant's chronological age. (Use of the higher age category is not automatic.) To decide which age category to use, take a "sliding scale" approach. Under this approach, the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

(HALLEX 5–302(A) (Ex. to Br. of Appellant in Supp. of Appeal, Mot. for Summ.J., and Remand)). The Administration's attempt to provide guidelines on this issue as articulated in the HALLEX has been given effect by the courts. *See Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir.1997); *Russell v. Commissioner of Soc. Sec.*, 20 F.Supp.2d 1133, 1134 (W.D.Mich.1998).

Pickard was 54 years old at the time of the ALJ's decision. The ALJ determined, based on Rule 202.11 of the grids, that the plaintiff, being a person closely approaching advanced age, having limited education, and being skilled or semi-skilled with transferable skills, as not disabled. Rule 202.02, however, directs a finding of disabled for a person of advanced age, with limited education, and non-transferable skills. Pickard argues that, as she was four months and one day shy of her 55th birthday, the ALJ should have considered her eligibility for benefits under the advanced age category of the grids. Had he done so, she presumably would have been found to be disabled.

In this case, the ALJ did not consider whether a borderline age situation existed, noting only that the claimant was 54 years old and was, therefore, an individual closely approaching advanced age. The question before the court, then, is whether his failure to do so when Pickard was four months and one day away from "advanced age" was supported by substantial evidence. The Regulations do not define the term "borderline situation." The courts have attempted to do so, generally concluding that the borderline range falls somewhere around six months from the older age category. *Compare Cox v. Apfel*, No. 98–7039, 1998 WL 864118, at *4 (10th Cir. Dec.14, 1998) (because plaintiff was within six months of next age category at time decision issued, ALJ erred by not addressing whether plaintiff was of borderline age); *Daniels v. Apfel*, 154 F.3d 1129, 1132–33 (10th Cir.1998) (65 days borderline); *Kane v. Heckler*, 776 F.2d 1130, 1132–33 (3d Cir.1985) (48 days required consideration of whether claimant was in borderline situation); *Smith v. Barnhart*, No. 00 C 2643, 2002 WL 126107, at 24 (N.D.Ill. Jan.31, 2002) (noting that the cases tend to treat claimants who are within six months of next age category as borderline); *Freundt v. Massanari*, No. 00 C 4456, 2001 WL 1356146, at *17–20 (N.D.Ill. Nov.2, 2001) (six months and 12 days from next age category should have triggered inquiry by ALJ concerning borderline situation); *Graham v. Massanari*, No. 00 C 4669, 2001 WL 527326, at *8 (N.D.Ill. May 9, 2001) (four and one-half months borderline); *France v. Apfel*, 87 F.Supp.2d 484, 491–92 (D.Md.2000) (five months borderline); *Russell*, 20 F.Supp.2d at 1134–36 (92 days borderline, stating that Appeals Council Interpretation II–5–302 (effective Mar. 16, 1979) "appears to establish that the Appeals Council believes there is a six month window in which a claimant's situation is 'borderline' "); *Tousignant v. Apfel*, No. 97 C 4150, 1998 WL 142415, at *5 (N.D.Ill. Mar.26, 1998) (finding that 10 months would seem to be borderline); *Leyba v. Chater*, 983 F.Supp. 1048, 1051 (D.N.M.1996) (three and one-half months borderline); *Davis v. Shalala*, 883 F.Supp. 828, 838–39 (E.D.N.Y.1995) (three months borderline); *Hill v. Sullivan*, 769 F.Supp. 467, 470–71 (W.D.N.Y. 1991) (three months two days borderline); *Chester v. Heckler*, 610 F.Supp. 533, 535 (S.D.Fla.1985) (one month triggered inquiry into borderline status); *Roush v. Heckler*, 632 F.Supp. 710, 711–12 (S.D.Ohio 1984) (six months borderline) *with Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (seven months not borderline); *Fleenor v. Secretary of Health & Human Servs.*, No. 92–5082, 1992 WL 379438, at *2–3 (6th Cir. Dec.15, 1992) (court would not disturb ALJ's finding as to the appropriate age category of claimant, even though he was five months shy of next category); *Wright v. Sullivan*, No. 91–5992, 1992 WL 75218, at *6 (6th Cir. Apr.15, 1992) (almost two years not borderline); *Barrett v. Apfel*, 40 F.Supp.2d 31, 39–40 (D.Mass.1999) (nine months not borderline); *Green v. Chater*, No. C–96–2299 MHP, 1997 WL 797807, at *3 (N.D.Cal. Dec.2, 1997) (three years not borderline); *Woods v. Chater*, No. C 95–1748 SI, 1996 WL 570490, *4–5 (N.D.Cal. Sept.27, 1996) (four months not borderline); *Peters v. Bowen*, No. CIV.A. 85–4431, 1986 WL 11398, at *5 (E.D.La. Oct.3, 1986) (two years not borderline).

■ Defendant contends, citing no cases, that the claimant bears the burden of establishing that her age is within a few days or months of a higher age category and that she has failed to carry that burden. As the court has noted, the Commissioner must determine at the fifth step in the sequential analysis whether, considering the claimant's residual functional capacity, age, education, and past work expe-

rience, she can perform other jobs. *See Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir.2002), *reh'g denied* (Mar. 7, 2002). It is at this point that the Commissioner is permitted to use the grids, which are matrices of the "four factors identified by Congress—physical ability, age, education, and work experience— and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Heckler v. Campbell,* 461 U.S. 458, 461–62, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983). In *Daniels,* the Tenth Circuit rejected the Commissioner's argument that the burden rested on the claimant to prove the grids should not be applied mechanically, stating that "placing the burden on the Commissioner of determining in the first instance what age category to apply is consistent with the Commissioner's existing burdens" and noting that "[a]pplication of § 404.1563(a) is a step-five issue." *Daniels,* 154 F.3d at 1134. The court further held that

> [w]hen a claimant falls within a borderline, § 404.1563(a) prohibits the Commissioner from mechanically applying the age categories in relying on the grids to determine whether a claimant is disabled. The Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.

*Id.* at 1136; *see also Russell,* 20 F.Supp.2d at 1135. The court finds the Tenth Circuit's rationale persuasive and agrees that the burden of demonstrating the age category into which a claimant belongs resides with the Commissioner.

In this case, it is beyond question the ALJ strictly and mechanically applied the age categories to the plaintiff. It is equally clear that he failed to address in any fashion whether a borderline age situation was present. The ALJ's failure to address the borderline issue and to explain his choice of age category under the circumstances of this case impede this court's ability to review his application of § 404.1563(a) and may indeed violate 20 C.F.R. § 404.953, which requires the ALJ to include in his decision findings of fact and reasons for his conclusions. *See Russell,* 20 F.Supp.2d at 1136. It is the opinion of the undersigned that the ALJ should have considered whether Pickard's proximity to the next higher age category placed her in a borderline situation and, based on whatever evidence was available, which category best described her. Therefore, it is RECOMMENDED that the matter be remanded to the ALJ for findings as to the appropriate age category to be applied. *See Daniels,* 154 F.3d at 1136; *Russell,* 20 F.Supp.2d at 1136.

*New Evidence.*

■ Plaintiff further argues that remand is appropriate based on new evidence presented for the first time to the Appeals Council. The evidence consists of an occupational therapy evaluation prepared by the Regional Medical Center at Memphis on May 10, 2001, nearly five months after the date of the ALJ's decision. According to a May 30, 2001 letter to the Appeals Council from plaintiff's counsel, the evaluation was conducted pursuant to a referral by her new cancer specialist, Dr. Adam Graves. The evaluation noted "phantom pain" that throbbed along the arm and fluctuated in intensity. Pickard described the pain as a "ten" on a scale from one to ten. Range of motion testing revealed right shoulder flexion/extension at 120 and 42 degrees, shoulder abduction/adduction at 50 and 30 degrees,

and shoulder interior/exterior rotation at 50 degrees. Plaintiff also exhibited poor strength in the right shoulder flexors and extensors, deltoids, and biceps, and a fair strength rating for the right triceps, supinator, pronator, wrist extensors, and wrist flexors. Grip strength was rated at 20 pounds. The examiner indicated that plaintiff complained of a stretching sensation on right wrist extension and pain on shoulder. Based on Pickard's pain, decreased range of motion of the right shoulder, decreased strength in the right upper extremity, and decreased endurance for daily tasks, therapy was recommended.

In its August 11, 2001 decision, the Appeals Council vacated its July 9, 2001 determination denying plaintiff's request for review in order to consider additional evidence. The Regulations provide that

> [i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision.

20 C.F.R. § 404.970(b) (2001). The Appeals Council reviewed the occupational therapy evaluation and found as follows:

> The Administrative Law Judge ruled on the issue of disability in your case only through December 20, 2000, the date of the decision. This later information, provided by a therapist at the Regional Medical Center at Memphis, is not material to the issue of whether you were disabled beginning on or before December 20, 2000.

(TR 4) The Appeals Council again denied review on the merits and advised the claimant that if she wished to receive a determination based on this evidence, she must file a new application for benefits. (TR 4).

Plaintiff also requests remand based on a physician's statement prepared on an Aetna – U.S. Healthcare form by Dr. T.E. Rizk and dated July 24, 2001, which indicated reduced range of motion in the right shoulder and upper extremity weakness resulting from the cancer surgery. Dr. Rizk described the plaintiff's physical impairment as a "moderate limitation of functional capacity," rendering her capable of performing sedentary activity. On an attached Functional Capacity Worksheet, the physician indicated that Pickard could push, pull, and carry occasionally, reach forward frequently, and never reach above the shoulder. He further opined that she was able to work four hours per day and could lift with the right arm one to five pounds frequently, 11 to 20 pounds occasionally, and never over 21 pounds. There is no indication that this evidence, dated after the original Appeals Council decision but prior to its final decision, was presented to the Appeals Council at any time.

It is well-settled in this circuit that a federal court may not uphold, modify, or reverse the decision of the ALJ based on evidence submitted first to the Appeals Council where the council declined to review the case on the merits. *See Cotton v. Sullivan,* 2 F.3d 692, 695–96 (6th Cir.1993). This is true even where the Appeals Council chose in its denial of review to discuss a particular piece of evidence presented to it first on appeal and found that the evidence did not provide a basis for changing the ALJ's decision. *See Osburn v. Apfel,* No. 98–1784, 1999 WL 503528, at *4 (6th Cir. July 9, 1999), *cert. denied,* 528 U.S. 1191, 120 S.Ct. 1248, 146 L.Ed.2d 106 (2000); *Thompson v. Commissioner of Soc. Sec.,* No. 97–5873, 1998 WL 476231, at *2 (6th Cir. Aug.3, 1998); *Cline v. Secretary of Health & Human Servs.,* 875 F.Supp. 435, 439 (N.D.Ohio 1995), *aff'd,* 96 F.3d 146 (6th Cir.1996).

The court may remand the matter for further administrative proceedings in light of new evidence, however, under the sixth sentence of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Commissioner of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir.1996). The Sixth Circuit has found that "[f]or the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir.2001) (citations and internal quotation marks omitted). "New evidence must indeed be new; it cannot be cumulative of evidence already in the record." *Elliott v. Apfel,* No. 00–5500, 28 Fed.Appx. 420, 423–24, 2002 WL 89668, at *3 (6th Cir. Jan.22, 2002). "Such evidence is material only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster,* 279 F.3d at 357 (citations and internal quotation marks omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Secretary of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir.1992) (citations omitted). Evidence is material if it is probative of the claimant's condition during the time period at issue before the ALJ. *See Mingus v. Commissioner of Soc. Sec.,* No. 98–6270, 1999 WL 644341, at * 5 (6th Cir. Aug.19, 1999); *Osburn,* 1999 WL 503528, at *5. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster,* 279 F.3d at 357. The mere fact that the evidence at issue was not in existence at the time of the ALJ's decision does not

establish good cause. *Perkins v. Apfel,* No. 00–5801, 2001 WL 845704, at *6 (6th Cir. Jul.17, 2001). The burden of establishing that remand is appropriate is borne by the plaintiff. *See id.*

The court finds that the evidence presented did not exist and was not available at the time of the ALJ's decision, and that the evidence is non cumulative. It is the further conclusion of the undersigned that the evidence is material, that is, there is a reasonable probability that the ALJ would have reached a different conclusion as to disability had the evidence been before him. The ALJ found the plaintiff's complaints of pain and loss of use of her right arm were not supported by objective evidence and, therefore, concluded they were not credible. The reports which make up the new evidence were prepared five and seven months after the ALJ rendered his decision. There is no indication that the plaintiff's condition as evaluated in the reports was a result of deterioration or change in her condition since the date of the ALJ's determination. Rather, given the relatively short time span involved, it is the opinion of the undersigned that the evidence is arguably probative of Pickard's condition during the relevant time period.

In support of her motion for remand, plaintiff argues that good cause exists for her failure to present the new evidence at an earlier date on the grounds that it did not exist until after the decision was handed down and that, up until the time of the ALJ's decision, her physicians focused on the cancer and follow-up surgeries to the exclusion of loss of use of the right arm. Only later did medical development of the residual effects on the arm occur. Although the fact that the evidence did not exist at the time of the ALJ's decision does not in itself establish good cause, the court finds that reasonable justification exists for the failure of plaintiff's physicians to address the residual effects of the cancer

prior to the ALJ's review of the matter. Based on the foregoing, while it is a close question, the court finds that plaintiff has carried her burden of showing that remand is appropriate for the purpose of allowing the ALJ to consider the new evidence presented by the plaintiff.

In sum, it is RECOMMENDED that this case be remanded to the ALJ for the reasons articulated herein.

### NOTICE

ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS FROM THE DATE OF SERVICE OF THE REPORT. FAILURE TO FILE THEM WITHIN TEN (10) DAYS OF SERVICE MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

July 23, 2002.